## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **3:21-CR-143** |
| **v.** | : | **(JUDGE MANNION)** |
| **JEREMY EDWARD JOHNSON,** | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Pending before the court is defendant Jeremy Edward Johnson's motion to suppress statements pursuant to <u>Fed.R.Crim.P. 12(b)</u>. (Doc. 94). The statements were made after he was taken into custody by officers on February 24, 2021, pursuant to a state probation violation warrant and, he was interrogated regarding the drug investigation relevant to this case. Johnson and his co-defendant, Susan Melissa Nickas, are charged with two counts in an Indictment, to wit: Count 1, Conspiracy to Distribute Controlled Substances, (heroin and fentanyl), Resulting in Death, in violation of 21 U.S.C. §846 and §841; and, Count 2, Distribution of a Controlled Substance Resulting in Death, in violation of Title 21 U.S.C. §841(a)(1). (Doc. 1).[1] The alleged victim regarding the charges against the defendants is Joshua

---

[1] Since the complete procedural background of this case is stated in the court's July 8, 2022 Memorandum which addressed Nickas' motion for a discovery disclosure timetable, (Doc. 112), it is not repeated herein.

("Josh") Kiernan, and his date of death is December 11, 2020. Johnson seeks the court to suppress all of his incriminating statements made during his interrogation after he allegedly invoked his Miranda right to speak to a lawyer and officers allegedly failed to cease the interrogation.

For the reasons discussed below, and after consideration of the briefs and the evidence submitted, including the video and audio recording of the interrogation, Johnson's suppression motion will be **DENIED IN ITS ENTIRETY** without the need for an evidentiary hearing.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

As a backdrop, detectives with the Monroe County DA's Office in conjunction with the PSP were investigating the death of Joshua Kiernan who died of a fentanyl/heroin overdose on December 11, 2020.

After Johnson was arrested on an outstanding Monroe County Court probation warrant on February 24, 2021, by detectives Lippincott, Vanluvender, and Luthcke, as well as PSP trooper De La Iglesia, (hereinafter

---

[2] For present purposes, the court utilizes portions of the factual background as stated in the court's July 20, 2022 Memorandum denying Nickas' motion to suppress, (Doc. 126), as well as Johnson's audio and video recorded interview conducted on February 24, 2021, which was submitted by Johnson and the government. (Doc. 94, Ex. A & Doc. 119). The factual background of this case is also contained in PSP trooper Nicolas De La Iglesia's narrative Offense Report, (Doc. 79-5), and in the Affidavit of Probable Cause in support of the March 11, 2021 search warrant for Nickas' cell phone data filed by Monroe County Detective Kim Lippincott, (Doc. 79-6). For present purposes only, this stated background is incorporated herein by reference.

the "officers"), he was taken into custody and transported to the Monroe County DA's Office to be interviewed regarding Kiernan's death. (*See* Doc. 79-6 at 6). Johnson was given his <u>Miranda</u> rights and asked to speak with officers regarding the drug charges in the instant case. The details of Johnson's interrogation that are at issue in his instant motion will be discussed below.

On May 25, 2021, the officers arrested Johnson pursuant to a warrant that was issued after he was federally indicted with Nickas in the instant case on May 18, 2021. (Doc. 1).

On June 17, 2022, Johnson filed, through his appointed counsel, his instant motion to suppress his statements. (Doc. 94). On July 1, 2022, he filed his supporting brief alleging that many of his statements to the officers were made after he invoked his <u>Miranda</u> rights to obtain a lawyer. (Doc. 104). Johnson submitted as an Exhibit to his motion a flash drive with his entire video recorded interrogation. (Doc. 94, Ex. A).

On July 12, 2021, the government filed its brief in opposition to Johnson's motion to suppress statements with a DVD containing the video recording of Johnson's complete interview. (Docs. 118 & 119).

The joint trial of Nickas and Johnson is schedule to begin on July 25, 2022.

## II.    LEGAL STANDARD FOR SUPPRESSION MOTION

In U.S. v. Sater, 477 F.Supp.3d 372, 379 (M.D. Pa. 2020), the court discussed a defendant's 5th Amendment rights in the context of a suppression motion and stated:

> The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "[T]he privilege against self-incrimination protects individuals not only from legal compulsion to testify in a criminal courtroom but also from 'informal compulsion exerted by law-enforcement officers during in-custody questioning.'" Pennsylvania v. Muniz, 496 U.S. 582, 589, 110 S.Ct. 2638, 110 L.Ed. 2d 528 (1990) (quoting Miranda v. Arizona, 384 U.S. 436, 461, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966)). To ensure a person's Fifth Amendment rights are protected, Miranda held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda, 384 U.S. at 444, 86 S.Ct. 1602.

Here, Johnson argues that a large portion of his post-*Miranda* incriminating statements to the officers were made after he invoked his right to have a lawyer and that officers failed to stop the interview, and he contends that these statements should all be suppressed since he no longer waived his rights under the 5th and 6th Amendments.

In U.S. v. Whiteford, 676 F.3d 348, 362 (3d Cir. 2012), the Third Circuit explained:

> The decision to waive one's Fifth Amendment rights must be the product of "a deliberate choice to relinquish the protection those rights afford." Berghuis v. Thompkins, 560 U.S. 370, 130 S.Ct. 2250, 2262 (2010). A court will inquire first, whether "the relinquishment of the right [was] voluntary in the sense that it was the product of a free and deliberate choice," and second, whether

4

the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135 (1986).

In United States v. Hodge, 2017 WL 1345219, *13 (D.V.I. Feb. 24, 2017), the court discussed a waiver of rights and stated:

> To determine whether *Miranda* rights have been voluntarily, knowingly, and intelligently waived, courts must "consider the totality of circumstances surrounding [the defendant's] statement." Briscoe, 69 F. Supp. 2d at 741 (quoting United States v. Tyler, 164 F.3d 150, 158 (3d Cir. 1998)) (quotations omitted). Courts also must consider "the background, experience, and conduct of the [defendant], as well as any indicia of coercion." *Id*. (citing Oregon v. Bradshaw, 462 U.S. 1039, 1046 (1983)) (internal citations omitted). Examples of "traditional" indicia of coercion are the duration and conditions of detention, the attitude of the interrogators, the defendant's physical and mental state, and other pressures affecting the defendant's powers of resistance and self-control. *Id*. at 741 n.1. "*Miranda* rights will be deemed waived only where the totality of the circumstances reveals both an uncoerced choice and the requisite level of comprehension." United States v. Sriyuth, 98 F.3d 739, 749 (3d Cir. 1996) (quoting Alston v. Redman, 34 F.3d 1237, 1253 (3d Cir. 1994)).

## III.  DISCUSSION

This court has jurisdiction over Johnson's motion to suppress under 18 U.S.C. §3231. A criminal defendant brings a pre-trial motion to suppress evidence under Fed.R.Crim.P. 12(b)(3)(C), in an effort "to show that evidence against him or her was unconstitutionally obtained." U.S. v. Hernandez, 2015 WL 5123924, at *4 (M.D. Pa. 2015). The initial burden of proof is on the defendant who seeks to suppress evidence. United States v.

Johnson, 63 F.3d 242, 245 (3d Cir. 1995). However, after the defendant establishes a basis for his motion, such as in this case by alleging that his statements were made after he asked for counsel, the burden shifts to the government. *Id.*

Johnson seeks the court to suppress the portions of his incriminating statements that were allegedly obtained unlawfully after he invoked his right to counsel, about 25 minutes into the one hour and 48 minute interrogation. Johnson contends that all of his statements after he told officers, "I want a lawyer", should be suppressed since he was in custody and being interrogated, and since officers continued to question him after he requested a lawyer. As such, Johnson contends that his statements made to officers after he unambiguously asked for a lawyer were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and the 5th and 6th Amendments, since they were not the result of a knowing, voluntary, and intelligent waiver of his right to remain silent and his right to counsel. *See* Miranda, 384 U.S. at 444 (holding that a defendant may waive his *Miranda* rights if his waiver is knowingly, intelligently, and voluntarily made).

The government has the burden of proving, by a preponderance of the evidence, that Johnson's statements made after the 25 minute mark during his interrogation were voluntary after he asked for a lawyer. *See* Sater, 477 F.Supp. 3d at 383. *see also* United States v. Paine, 2021 WL 3674616, *3 (E.D. Pa. August 19, 2021) ("The Government bears the burden of proving statements were 'the product of an essentially free and unconstrained

choice' by a preponderance of the evidence.") (citation omitted); United States v. Velasquez, 885 F.2d 1076, 1086 (3d Cir. 1989) (holding that the government has the burden of proving, by a preponderance of the evidence, that waivers of *Miranda* rights during an interview were knowing and voluntary.).

If the government fails to meet its burden, Johnson's involuntary statements are not admissible in evidence for any purpose. *See* Paine, 2021 WL 3674616, *3 ("Involuntary statements made to law enforcement are inadmissible."). If the government fails to meet its burden, the defendant's statements made after he invoked his *Miranda* rights are not admissible in evidence for any purpose. "Due process requires a suspect's confession to be voluntary if it is to be admitted into evidence", and "[a] confession is involuntary if the suspect's will was overborne in such a way as to render his confession the product of coercion." Sater, 477 F.Supp.3d at 384 (internal citations omitted). Additionally, "[i]t is well established that an involuntary confession may result from psychological, as well as physical, coercion", Miller v. Fenton, 796 F.2d 598, 603 (3d Cir. 1986), and "[t]he question in each case is whether the defendant's will was overborne when he confessed." *Id.* at 604. The court considers, in part, "the specific tactics utilized by the police in eliciting the admissions," and "the details of the interrogation" in determining whether the officer's statements and actions, as well as the conditions, were so coercive that they deprived the defendant of "his ability

to make an unconstrained, autonomous decision to confess." Miller, 796 F.2d at 604.

As the court in United States v. Paine, 2021 WL 3674616, *3 (E.D. Pa. Aug. 19, 2021), explained:

> The Fifth Amendment's prohibition against compelled self-incrimination requires that *Miranda* warnings precede custodial interrogations. *See* Edwards v. Arizona, 451 U.S. 477, 481–82 (1981). If *Miranda* warnings are not issued a "presumption of compulsion" applies, Oregon v. Elstad, 470 U.S. 298, 307 (1985), and "evidence resulting from the questioning must be suppressed." United States v. Jacobs, 431 F.3d 99, 104 (3d Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444–45 (1966)). A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. Law enforcement is not required to give *Miranda* warnings outside of a custodial interrogation. *See* United States v. Willaman, 437 F.3d 354, 359 (3d Cir. 2006).

> Custody requires "circumstances that are thought generally to present a serious danger of coercion." Howes v. Fields, 565 U.S. 499, 508–09 (2012). To determine whether a person is in custody, "the initial step is to ascertain whether, in light of the objective circumstances of the interrogation ... a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* at 509 (internal citations and quotations omitted); *see also* J.D.B. v. North Carolina, 564 U.S. 261, 262 (2011) ("[T]he test involves no consideration of the particular suspect's 'actual mindset'") (citation omitted). Courts must consider the totality of circumstances surrounding an interrogation to determine how an individual would have assessed his freedom of movement. *See id.* (quoting Stansbury v. California, 511 U.S. 318, 322, 325 (1994) (per curiam)).

Additionally, "[r]elevant circumstances include the location and duration of questioning, statements made during questioning, the presence

or absence of physical restraints and the release of the interviewee at the end of questioning." *Id.* (citation omitted).

Johnson argues that all of his alleged incriminating statements made during his interview after he first asked for a lawyer (25:20) should be suppressed because he invoked his <u>Miranda</u> rights and, because his statements to officers were made after they continued to interrogate him despite asking for counsel. Specifically, Johnson argues that after he initially waived his <u>Miranda</u> rights and made statements to the officers, at about 25 minutes into the interrogation, he stated, "I want a lawyer", and this was tantamount to invoking his <u>Miranda</u> rights and to wishing to remain silent and not answers any more of the officers' questions. Johnson contends that his invocation of his right to counsel was clear and unambiguous and essentially made without limitation and, that the officers were therefore required to stop the interrogation immediately. For support, Johnson cites to <u>Davis v. United States</u>, 512 U.S. 452, 461 (1994), stating that when he invoked his right to an attorney, the officers had to immediately cease questioning him until he had counsel present. No doubt that if a defendant makes "an objectively identifiable request for counsel" to invoke his 5th Amendment rights during his interrogation by officers, the questioning must cease until counsel is present. *See* <u>Whiteford, 676 F.3d at 362</u> (citing <u>Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350 (1994)</u>). *See also* <u>U.S. v. Coles</u>, 552 F.Supp.3d 471, 489 (M.D. Pa. 2021) ("Once a suspect invokes the right to counsel, police must immediately cease interrogation until counsel is

present.") (citing [Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)](#)).

The government contends that Johnson himself voluntarily reinitiated conversations with officers after his invocation of his rights to counsel and to remain silent, and that all of his statements are admissible for trial.

No doubt that Johnson was in custody at the time in question after his arrest on the state probation warrant, *see* Coles, 552 F.Supp.3d at 489 (defendant arrested on the New York state parole warrant was in custody), and that he was read his Miranda rights at the beginning of his interrogation, and he indicated that he understood his rights. As the government, (Doc. 118 at 7), then summarizes:

> [Johnson] was further asked and confirmed that no promises or threats were used to induce him to waive his rights and that he was speaking of his own free will and accord. (1:00–2:00 min). As the video recording demonstrates, two law enforcement officers reviewed those rights with Johnson who sat uncuffed comfortably at an interview table. Johnson was advised that he could stop the interview at any time and that the interview was being recorded.

It is then clear that initially Johnson agreed to speak with the two officers, namely detective Vanluvender and PSP trooper De La Iglesia, who were present in the room with him. Johnson then began to voluntarily speak with the officers.[3]

---

[3]*See* Doc. 94, Ex. A, and the DVD submitted with the government's brief, Doc. 119. Since Johnson's entire interrogation lasting about one hour and 48 minutes is on the flash drive and the DVD, the court only provides a brief summary of the relevant portions for present purposes.

The officers then began to discuss Joshua Kiernan and his death and, asked Johnson how he knew Josh and for how long. Officers indicated what they were questioning Johnson about, i.e., Josh's death. Johnson then made incriminating statements to the officers, including statements with respect to his drug use, Josh's drug use and, selling drugs. At about 25 minutes and 20 seconds into the interview, Johnson stated, "I want a lawyer." Since the entire relevant portion of the interview, (25:00–30:22 min.), is accurately transcribed in the government's brief, (Doc. 118 at 8-13), and is contained on the flash drive and the DVD submitted by the parties, the court does not fully repeat it and incorporates the transcript herein by reference.

Significantly, after Iglesia acknowledged Johnson's request for a lawyer, he told Johnson "that's fine so let's stop the interview now ok", and then advised Johnson of the charge he was facing so Johnson could discuss it with his lawyer. Johnson continued to speak and Iglesia stated "I'm not asking you any more questions" and further explained the criminal prosecution process and the potential life sentence that Johnson may face, particularly with his prior drug conviction. Iglesia then stated to Johnson, "so you want a lawyer, unless you decide you want to waive those rights later that's fine…." Iglesia then began to tell Johnson what he should discuss with his lawyer after he left the interview and Johnson interrupted and continued to speak denying that he delivered the drugs to Josh and stating that he was "Pretty sure [the officers] know that." Vanluvender challenged Johnson's denial and stated that they could prove the drug delivery "circumstantially."

Johnson asked "how", and Iglesia then stated that "well you already asked for an attorney" and, Vanluvender said "We're done. We're done." Iglesia that asked Johnson, "Are you waiving that right [to an attorney]?" Vanluvender then explained that they were just giving Johnson "a little information as we're parting ways." Johnson interjected that he wanted the officers to be honest with him, to tell him what's going on, to treat his like an adult, and that "we can talk through it and figure it out." He then said, "What do you want?"

The following relevant conversation, (Id. at 12), then occurred:

ND [Iglesia] -- Are you waiving your right to an attorney and can we ask questions or not

JJ [Johnson] – Sure whatever just .....

ND – It's not whatever

CV [Vanluvender] – Right, you asked for an attorney, you have to say now that I don't want an attorney I understand that I can ask for one again later on and it has to be rule of course

ND – At this point do you want an attorney

JJ – Yes, no let's continue

ND – Ok

JJ – Let's figure this out (inaudible)

Iglesia then told Johnson some of the evidence they had and Johnson then continued his discussion with the officers and continued to talk with them voluntarily and without being coerced. In fact, as the government points out, (Doc. 118 at 14), "not only did Johnson reinitiate his interactions with

[the officers], he actually never ceased the conversation, despite being told that the interview was over because he asked for an attorney." It also states that "Johnson [then] reaffirmed his desire to continue to talk by stating, '[l]et's continue' and 'let's figure this out.'" An open discussion then continued between the three men for over one hour.

Recently, in United States v. Rought, 11 F.4th 178, 186 (3rd Cir. 2021), the Third Circuit explained:

> To safeguard [the 5th Amendment right against self-incrimination], the Supreme Court in Miranda "imposed certain obligations on police in custodial interrogations, in order to dissipate the 'compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.'" United States v. Velasquez, 885 F.2d 1076, 1084 (3d Cir. 1989) (quoting Miranda, 384 U.S. at 467, 86 S.Ct. 1602). The familiar Miranda warnings require police to "inform the suspect of his right to remain silent and his right to have counsel present during interrogation, as well as their intent to use his statements to secure a conviction." Id. Police must also "cease the interrogation if at any point the suspect indicates that he wishes to remain silent or that he wants an attorney." Id.

Additionally, in Rought, 11 F.4th at 192–93, the Court stated:

> [a] waiver of the Miranda rights must be voluntary, knowing, and intelligent considering the totality of the circumstances. [United States v. Velasquez, 885 F.2d 1076, 1086 (3d Cir. 1989)] (citing Miranda, 384 U.S. at 444, 86 S.Ct. 1602). A waiver is voluntary if "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Colorado v. Spring, 479 U.S. 564, 573, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (quoting Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). In the voluntariness inquiry, "[a] suspect's background and experience, including prior dealings with the criminal justice system, should be taken into account." United States v. Jacobs, 431 F.3d 99, 108 (3d Cir. 2005). A waiver is knowing and intelligent if "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon

it." Spring, 479 U.S. at 573, 107 S.Ct. 851 (quoting Burbine, 475 U.S. at 421, 106 S.Ct. 1135); see also Berghuis v. Thompkins, 560 U.S. 370, 382-83, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010). If the Government "shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." Berghuis, 560 U.S. at 384, 130 S.Ct. 2250.

However, the Third Circuit in Rought, *id*. at 183, also explained:

In Connecticut v. Barrett, 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987), the Supreme Court held that invocations of [a Miranda right] during custodial interrogations can be "limited." Id. at 529-30, 107 S.Ct. 828. After a limited invocation, interrogation can continue on topics not covered by the invocation. If the suspect, without prompting from law enforcement, then voluntarily reinitiates discussion of a covered topic and waives her previously invoked [Miranda] rights, it "is quite consistent with the Fifth Amendment" for the suspect's statements about a covered topic to be admissible at trial. Id. at 529, 107 S.Ct. 828.

Here, as the government points out after Johnson initially invoked his right to a lawyer, after which he was told by officers that if he wanted an attorney the questioning would stop. The officers then provided Johnson with information to discuss with his lawyer. Johnson continued to speak and, finally, he was asked if, "at this point do you want an attorney." Johnson then gave an unequivocal and unambiguous response and stated, "no let's continue." Subsequently, for over an hour, there is no evidence that Johnson again expressly stated that he did not want to speak to the officers any longer or that he again asked for a lawyer. Nor did Johnson request that the interview cease during the next hour.

14

At issue is whether Johnson wanted the questioning to end until he had a lawyer, whether he continued to voluntarily speak with officers after he told them he wanted a lawyer, and whether he then waived his rights under <u>Miranda</u> after he invoked them.

Having listened to and watched the video of the interrogation, the court finds that "without prompting from law enforcement," after Johnson asked for a lawyer, he then "voluntarily reinitiates discussion of [all topics] and waives h[is] previously invoked [<u>Miranda</u>] rights." <u>Rought</u>, *id*. at 183. No doubt that "[i]f a suspect who has invoked [one of his <u>Miranda</u> rights] but … initiates discussion with the authorities, further interrogation can take place." *Id*. at 186. "Post-invocation statements made during that interrogation may then be admissible against the suspect at trial if the suspect knowingly and voluntarily waives the right to counsel and the right to remain silent." *Id*. (citations omitted).

In <u>Rought</u>, 11 F.4th at 187, the Court stated that "[a] waiver [of the <u>Miranda</u> rights] is knowing and intelligent if 'made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.'" (citing Spring, 479 U.S. at 573, 107 S.Ct. 851 (quoting Burbine, 475 U.S. at 421, 106 S.Ct. 1135); Berghuis v. Thompkins, 560 U.S. 370, 382-83, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010)). Further, "[i]f the Government 'shows that a <u>Miranda</u> warning was given and that it was understood by the accused, an accused's uncoerced statement establishes

an implied waiver of the right to remain silent.'" *Id*. (quoting Berghuis, 560 U.S. at 384, 130 S.Ct. 2250).

After reading the briefs and reviewing the evidence, including the entire videoed interview on the DVD, the court finds that Johnson's Miranda waiver after he asked for a lawyer, was voluntary, was knowingly made, and was the result of his deliberate choice to continue the interview. The record shows that after he asked for a lawyer, Johnson then reinitiated the interview and voluntarily continued the discussion with the officers. "Once there has been an initiation, further interrogation can take place, and the suspect's statements may be admissible against him at trial if he validly waives the right to remain silent and the right to counsel." Rought, 11 F.4th at 187. Thus, the government met it burden of proving a valid waiver after the 25:20 minute mark on the video by a preponderance of the evidence.

Additionally, based on the totality of the circumstances, the court finds that Johnson, through his words and conduct, waived his right to remain silent after the 25:20 minute mark. "A waiver is generally held to be knowing and voluntary 'if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *Id*. at 192 (quoting United States v. Ruiz, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002)) (emphasis original). Further, similar to Rought, *id*., "[t]here is also no basis in the record [i.e., the DVD video recording of the interview] for finding involuntariness", regarding the waiver after Johnson

invoked his right to a lawyer. In fact, after Johnson stated he wanted a lawyer, the officers explained the process and how the case would proceed, and told him that if he wanted a lawyer, the questioning would stop. Johnson then told the officers, "No, Let's continue." In short, as in Rought, *id*., nothing the officers "said or did [during Johnson's interview] approaches the kind of law enforcement overreach necessary to render a statement involuntary." As such, the court finds that after the 25:20 minute mark, Johnson "knowingly, intelligently, and voluntarily waived his right to remain silent and his [un]limited invocation [to ask for a lawyer]." Rought, *id*. (citing Berghuis, 560 U.S. at 384, 130 S.Ct. 2250; Velasquez, 885 F.2d at 1087-89). *See also* U.S. v. Williams, 2022 WL 1498058, *4 (M.D. Pa. May 11, 2022) ("The interactive process shown on the video shows that Defendant '[knew] of his available options before deciding what he [thought] best suit[ed] his particular situation.'") (quoting Collins v. Brierly, 492 F.2d at 739).

Moreover, it is of no moment that after Johnson stated he wanted a lawyer, that the trooper explained to him that he would stop the interview but he informed Johnson about the possible charge he was facing, i.e., drug delivery resulting in death, his potential sentence, and the prosecution process, either in the state system or as a federal charge. (*See* Doc. 118 at 10). *See* U.S. v. Green, 2022 WL 574864, *10 (W.D. Pa. Feb. 25, 2022) (holding that "[t]he facts that [defendant] likely faced criminal charges and detention if he refused to cooperate and that [officer] presented [defendant] with unpleasant options does not make his waiver of rights non-voluntary.")

(citing United States v. Falciglia, 421 F.App'x 146, 147 (3d Cir. 2008) ("an officer may indicate that the defendant's statements could bring about leniency without violating Miranda.").

Additionally, as the government, (Doc. 118 at 16), indicates, "[a]t the time of his arrest, Johnson was thirty years old and could read, write, and understand English." The court also notes that Johnson had prior experience with the criminal justice system, namely, he has previous felony convictions for Conspiracy to Manufacture, Deliver or Possession with Intent to Manufacture or Deliver Controlled Substances, in Monroe County, Pennsylvania, *see* Com. of PA v. Jeremy Johnson, Crim. Nos. CP-45-CR-1419-2012 and CP-45-CR-1429-2012,[4] and he "was surely aware that his statements to law enforcement could be used against him." *Id.* at 193.

Based on the totality of circumstances regarding all of Johnson's *Mirandized* statements given on February 24, 2021, the court finds that the government has met its burden of establishing Johnson's waiver was valid since it was voluntary and the result of his free and deliberate choice and not the result of threats or coercion or promises. Johnson was fully advised of the rights he was waiving and the consequences of his decision to waive them. Johnson then verbally acknowledged his rights, and he then voluntarily responded to the officers' questions. Even 25 minutes after the start of the

---

[4]On May 26, 2021, the government filed an information of Johnson's prior felony controlled substance state convictions pursuant to 21 U.S.C. §851(a). *See* Doc. 10. The court takes judicial notice of Johnson's state court convictions.

interview when he asked for a lawyer, Johnson withdrew his invocation and he agreed to continue with the questioning. Thus, his post-invocation incriminating statements are admissible.

Also, there is no credible evidence that Johnson was coerced by the officers or that the officers forced him to answer questions after he asked for a lawyer. In fact, the video recording of the interview fails to support any claim of coercion as it reveals that Johnson freely reinitiated the interview and then participated in the conversation with the officers. As such, the court finds that all of Johnson's post-Miranda admissions were knowingly made and not coerced and, they will not be suppressed for trial. Johnson's motion to suppress will be denied in its entirety without the need for a further evidentiary hearing.[5]

---

[5]In U.S. v. Blackman, 407 Fed.Appx. 591, 594-95 (3d Cir. 2011), the Third Circuit stated:

> An evidentiary hearing for a motion to suppress is not granted as a matter of course. *See* Fed.R.Crim.P. 12(c) ("The court may ... schedule a motion hearing."); United States v. Sophie, 900 F.2d 1064, 1071 (7th Cir. 1990) ("A district court does not have to hold an evidentiary hearing on a motion just because a party asks for one."). A motion to suppress only entitles a defendant to a pretrial evidentiary hearing when a defendant's moving papers demonstrate a "'colorable claim' for relief." United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir.1996) (citations omitted). "In order to be 'colorable,' a defendant's motion must consist of more than mere bald-faced allegations of misconduct." *Id*. (citation omitted). Instead, a motion to suppress must be detailed enough to present both a colorable constitutional claim and disputed issues of material fact that will affect a district court's resolution of the motion. *Id*.

## IV.   CONCLUSION

Based on the foregoing, the court finds that all of Johnson's statements to the officers during his February 24, 2021 interview were made after he was given <u>Miranda</u> rights and after he knowingly and intelligently waived those rights, and that he was not coerced to make the statements based on the totality of the circumstances in which he made them. Thus, Johnson's motion to suppress his statements, **(Doc. 94)**, will be **DENIED IN ITS ENTIRETY**, without the need for an evidentiary hearing. An appropriate order will be issued.[6]

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 20, 2022**
21-143-05

---

[6] The court notes that some of Johnson's statements implicating Nickas may have to be redacted for trial pursuant to <u>Bruton</u>, as the court indicated in its July 8, 2022 Memorandum denying the defendants' motions to sever the trial. (Doc. 114).