UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 3:21-143 |
| JEREMY EDWARD JOHNSON and SUSAN MELISSA NICKAS, | : | (JUDGE MANNION) |
| Defendant | : | |

## MEMORANDUM

Presently before the court are the July 5, 2022 motions *in limine* filed by the government. The first motion seeks the court to direct defendants not to reference any potential penalties they may face and is filed pursuant to FRE 401 and 402. **(Doc. 108)**. The second motion is filed pursuant to Federal Rule of Evidence 609, and seeks to introduce evidence of defendant Jeremy Johnson's prior felony drug convictions for impeachment purposes if he testifies at trial. **(Doc. 110)**. Neither defendant has filed a brief in opposition to the government's motions.[1]

---

[1] Since the complete procedural background of this case is stated in the court's July 8, 2022 Memorandum which addressed Nickas' motion for a discovery disclosure timetable, (Doc. 112), it is not repeated herein.

## I. BACKGROUND[2]

Johnson and his co-defendant, Susan Melissa Nickas, are charged with two counts in an Indictment, to wit: Count 1, Conspiracy to Distribute Controlled Substances, (heroin and fentanyl), Resulting in Death, in violation of 21 U.S.C. §846 and §841(a)(1); and, Count 2, Distribution of Controlled Substances, (heroin and fentanyl), Resulting in Death, in violation of Title 21 U.S.C. §841(a)(1), as well as aiding and abetting this offense under 18 U.S.C. §2. (Doc. 1). The alleged victim regarding the charges against the defendants is Joshua ("Josh") Kiernan, who died on December 11, 2020, due to "Mixed Substance Toxicity." (Doc. 96, Ex. A). The joint trial with both defendants is scheduled to commence on July 25, 2022.

## II. STANDARD

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's

---

[2]For present purposes, the court utilizes portions of the factual background as stated in the court's July 20, 2022 Memorandum denying Nickas' motion to suppress, (Doc. 126), The factual background of this case is also contained PSP trooper Nicolas De La Iglesia's narrative Offense Report, (Doc. 79-5), and in the Affidavit of Probable Cause in support of the March 11, 2021 search warrant for Nickas' cell phone data filed by Monroe County Detective Kim Lippincott, (Doc. 96-2). This stated background is incorporated herein by reference.

inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 41 n. 4 (1984). "The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." United States v. Tartaglione, 228 F.Supp.3d 402, 406 (E.D. Pa. 2017). On a motion *in limine*, evidence should only be excluded "when the evidence is clearly inadmissible on all potential grounds." *Id.* Evidentiary rulings on motions *in limine* are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1213 (3d Cir. 1995); Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994). "The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial." Ridolfi v. State Farm Mutual Auto. Ins. Co., 2017 WL 3198006, *2 (M.D. Pa. July 27, 2017). Further, "[c]ourts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence." *Id.*

"A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." Tartaglione, 228 F.Supp.3d at 406. "Further, a trial court's ruling on a motion *in limine* is 'subject to change when the case unfolds, particularly if actual

- 3 -

testimony differs from what was contained in the movant's proffer.'" Id. (quoting Luce v. United States, 469 U.S. 38, 41, 105 S.Ct. 460 (1984)).

### III.   DISCUSSION

**A. Motion *in Limine* Regarding Potential Punishment**

The government's first motion *in limine* seeks to preclude any reference to possible punishment of the defendants at trial and to preclude defendants and their witnesses from mentioning to the jury the potential penalties the defendants will face if convicted. In United States v. Fisher, 10 F.3d 115, 121 (3d Cir.1993), the Third Circuit explained, "[i]n the federal courts, the role of the jury in a non-capital case is to determine whether the defendant is guilty or not guilty based on the evidence and the applicable rules of law." "The jury is supposed to perform this role without being influenced in any way by what the consequences of its verdict might be." Id. As such, "federal criminal juries are almost never instructed concerning the consequences of verdicts" and, "[o]n the contrary, they are often specifically instructed not to consider those consequences." Id. "Trial courts also have a 'duty to limit the jury's exposure to only that which is probative and relevant and must attempt to screen from the jury any proffer that it deems irrelevant.'"

U.S. v. Vasquez, 2009 WL 902372, *1 (E.D. Pa. April 3, 2009) (quoting United States v. Romano, 849 F.2d 812, 815 (3d Cir. 1988)).

Thus, the court will **GRANT** the government's motion *in limine*, **(Doc. 108)**, and no party shall introduce evidence, or reference, or elicit testimony regarding potential penalties or mandatory sentences the defendants will be facing if either defendant is convicted. *See* Vasquez, 2009 WL 902372, *1 (holding that the court should try "to minimize any influence that a potential sentence might have on the jury's verdict", and that by "precluding any reference to the punishment that [defendant] may face if the jury renders a verdict of guilty is the appropriate means of achieving this goal."); United States v. Browne, 2022 WL 1063953, at *5 (D. N.J. Apr. 8, 2022) ("The law here is clear. A jury empaneled to only decide guilt or innocence of the defendant beyond a reasonable doubt should not hear evidence about 'what the consequences of its verdict might be.'") (quoting United States v. Fisher, 10 F.3d 115, 121 (3d Cir. 1993)).

**B. Motion *in Limine* Regarding Johnson's Prior Convictions**

The government seeks to introduce evidence of Johnson's prior felony drug convictions under Rule 609(a)(1)(B). (Doc. 110). Federal Rule of

- 5 -

Evidence 609 pertains to the use of a witness's prior convictions for impeachment purposes and provides:

> The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant[.]

Fed.R.Evid. 609(a)(1)(B).

No doubt that "Rule 609 permits evidence of a prior felony conviction to be offered to impeach a testifying witness. However, when the testifying witness is also the defendant in a criminal trial, the prior conviction is admitted only 'if the probative value of the evidence outweighs its prejudicial effect to that defendant.'" United States v. Caldwell, 760 F.3d 267, 286 (3d Cir. 2014) (citing Fed.R.Ev. 609(a)(1)(B)). The Third Circuit has held that this Rule "reflects a heightened balancing test" with a "predisposition toward exclusion" and, that "[a]n exception [to exclusion of the evidence] is made only where the prosecution shows that the evidence makes a tangible contribution to the evaluation of credibility and that the usual high risk of unfair prejudice is not present." Id. (citation omitted). "When offering a prior

- 6 -

conviction to impeach a testifying defendant, the government bears the burden of satisfying the heightened balancing test set out in Rule 609(a)(1)(B)." Caldwell, 760 F.3d at 289.

The Third Circuit has "recognized four factors that should be considered when weighing the probative value against the prejudicial effect under this heightened test." *Id.* at 286. The four factors are: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the [defendant's] testimony to the case; [and] (4) the importance of the credibility of the defendant." *Id.* at 286 (citing Virgin Islands v. Bedford, 671 F.2d 758, 761 n. 4 (3d Cir. 1982)).

"The Government bears the burden of demonstrating the probative value of the prior conviction outweighs its prejudicial effect." United States v. Wilson, 2016 WL 2996900, *2 (D. N.J. May 23, 2016) (citing Bedford, 671 F.2d at 761. "The defendant is then permitted to rebut the Government's presentation, explicating the potentiality for unfair prejudice from admission of the evidence." *Id.* (citation omitted)

Johnson's relevant prior convictions which the government seeks to use to impeach him if he testifies, (*see* Doc. 10), are as follows:[3]

1) Conspiracy to Manufacture, Delivery or Possession with Intent to Manufacture or Deliver Controlled Substances, in Monroe County Court, Pennsylvania, Criminal Number CP-45-1419-2012, a felony controlled substance offense, (offense date 05/22/2012). Johnson was charged in June 2012, he was convicted at trial on May 8, 2013, and he was sentenced on July 30, 2013, to a minimum of 4 months to a maximum of 8 months in prison.

2) Conspiracy to Manufacture, Delivery or Possession with Intent to Manufacture or Deliver Controlled Substances, in Monroe County Court, Pennsylvania, Criminal Number CP-45-1429-2012, a felony controlled substance offense, (offense date 05/22/2012). Johnson was arrested in June 2012, he was convicted in a joint trial with the CP-45-1419-2012 case on May 8, 2013, and he was sentenced on July 30, 2013, to a minimum of 4 months to a maximum of 9 months in prison.[4]

The court will now consider all of the Bedford factors with respect to Johnson's two prior felony drug convictions.

---

[3] Pursuant to 21 U.S.C. §851(a), the government provided written notice to Johnson, by filing an Information of Prior Convictions of Controlled Substance Offenses, (Doc. 10), of its intent to rely upon the defendant's above stated prior convictions to support a request at sentencing for an increased punishment..

[4] The court takes judicial notice of the defendant's prior convictions since the criminal dockets are state court records. *See* https://ujsportal.pacourts.us/Report/CpDocketSheet

In considering the first factor regarding the kind of crime involved, "courts consider both the impeachment value of the prior conviction as well as its similarity to the charged crime." Caldwell, 760 F.3d at 286. "The impeachment value relates to how probative the prior conviction is to the witness's character for truthfulness." Id. "With respect to the similarity of the crime to the offense charged, the balance tilts further toward exclusion as the offered impeachment evidence becomes more similar to the crime for which the defendant is being tried." Id. Thus, "[a]s to similarity of the crimes, prior convictions for the same or similar crimes are admitted sparingly, and [w]hen a prior crime committed by an accused criminal defendant is similar to the one with which the defendant is charged, the prejudicial effect (suggesting a propensity to commit the crime) of a prior conviction admitted for impeachment may well outweigh its probative value." United States v. Cooper, 2021 WL 3732789, at *3 (E.D. Pa. Aug. 24, 2021) (internal quotations and citations omitted). "Consequently, prior convictions for the same or similar crimes are admitted sparingly." Id.

Defendant Johnson's prior convictions at issue are two state felony drug convictions that occurred less than ten years ago. (Doc. 10).

The government contends that even though Johnson's prior drug trafficking conspiracy convictions are similar offenses to the present ones and have less probative value, his prior convictions do have probative value and are still admissible under Rule 609 if Johnson testifies since his credibility and veracity will be at issue. No doubt that since Johnson's prior drug convictions are similar to his present offenses, the court must consider whether the prejudicial effect to his prior drug offenses outweighs their probative value.

As the government recognizes, even though Johnson's prior drug crimes have a similarity to the instant drug trafficking charges, this court has held in other drug cases that a defendant's felony drug convictions can be used to impeach his credibility if he testifies. *See* United States v. Santiago-Rivera, 2017 WL 4551039 *7 (M.D. Pa. Oct. 12, 2017) (holding that felony narcotics convictions may be used to impeach defendant's credibility if he testifies); United States v. Carey, 2019 WL 6492566, *6 (M.D. Pa. December 3, 2019) ("The court concurs with the government and finds that Carey's March 2009 drug trafficking conviction is also admissible for impeachment purposes if he testifies at trial despite its similarity to the drug offenses he is charged with in the instant case.") (citing United States v. Murphy, 172

F.App'x 461, 462-63 (3d Cir. 2006) (Third Circuit held that drug convictions of defendant were admissible at trial for impeachment purposes under Rule 609(a)(1) even though defendant is charged with a drug trafficking offense).

As the court in Cooper, 2021 WL 3732789, *7, explained:

> Under the first [Bedford] factor, the nature of the crime involved, courts have concluded that prior drug convictions "are relevant to a defendant's veracity because 'a drug trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie.'" *See, e.g.,* United States v. Rose, 2008 WL 650034 at *6, (E.D. Pa. Mar. 7, 2008) (quoting United States v. Borrome, 1997 WL 786436 at *4 (E.D. Pa. Dec. 2, 1997) [*aff'd*, 166 F.3d 1206 (3d Cir. 1998)]). The Third Circuit, among others, have repeatedly concluded that "[t]here is no question that, given a proper purpose and reasoning, drug convictions are admissible in a trial where the defendant is charged with a drug offense." Sampson, 980 F.2d at 887; Murphy, 172 F.App'x at 463 (affirming the district court's decision to admit the defendant's prior drug convictions under Rule 609 and quoting the district court, which when considering the nature of the crime, stated "the drug convictions are, of course, felonies" and "being one that does involve a great deal of secrecy and lying, it seems to me that the first factor weighs in favor of admitting the evidence").

Thus, the court finds that the first Bedford factor weighs in favor of admitting Johnson's prior felony drug convictions to impeach him. *See* Cooper, *supra*. In order to reduce any risk of prejudice to Johnson, the court will give the jury an appropriate limiting instruction regarding the proper purpose of impeachment by a prior conviction. *See* Santiago-Rivera, *supra*.

The second <u>Bedford</u> factor, the age of the prior convictions appears to weigh in favor of admissibility as to Johnson's two prior drug convictions since these convictions occurred within the ten year period and are timely pursuant to the ten-year "look back" period set forth in Rule 609(b), providing that the relevant date is the date of the defendant's conviction or release from confinement, whichever is later. With respect to both convictions, Johnson was sentenced on July 30, 2013, and he was paroled in March of 2014. He then violated his parole and he was re-sentenced, and then re-paroled in August of 2014. He violated parole again in September of 2014, and his parole was revoked in December 2014. Johnson was then re-sentenced on January 28, 2015, and his maximum sentence date was March 24, 2015.

Thus, both of Johnson's convictions occurred within the past ten years and are timely.

As such, the second <u>Bedford</u> factor weighs in favor of allowing the government to impeach Johnson with his prior drug convictions.

"The third factor inquires into the importance of the defendant's testimony to his defense at trial." <u>Caldwell</u>, 760 F.3d at 287. "If it is apparent to the trial court that the accused must testify to refute strong prosecution

evidence, then the court should consider whether, by permitting conviction impeachment, the court in effect prevents the accused from testifying." *Id.* (citation omitted). Thus, "[i]f a defendant's testimony is important to his defense, this factor weighs against admitting a prior conviction." Wilson, 2016 WL 2996900, *3 (citation omitted). However, "[if] the defense can establish the subject matter of the defendant's testimony by other means, the defendant's testimony is less necessary, so a prior conviction is more likely to be admitted." Caldwell, 760 F.3d at 288 (citation omitted).

In its brief, (Doc. 111 at 9), the government states that:

> the testimony of the defendant will set up a credibility contest between the defendant and the government's witnesses. The government has charged Jeremy Johnson with participating in a conspiracy to distribute fentanyl laced heroin, resulting in the death, and with aiding and abetting another with the distribution of fentanyl laced heroin, resulting in death. At trial, several lay witnesses will testify on behalf of the government. Further, at trial, Johnson may testify that he did not distribute fentanyl laced heroin, or that someone else (possibly one of the government's lay witnesses) distributed the drugs that resulted in the death of the victim in this case. The jury will be asked to choose between the defendant's version of events and that provided by the government's witnesses, including both lay and law enforcement witnesses. The credibility of these witnesses, therefore, will be crucial to establishing the government's case, as well as the defendant's defense.

Johnson's testimony in this case may be important to demonstrate the validity of his defense and it may be "fundamentally important to his defense." Caldwell, 760 F.3d at 289. As such, the court will balance the third factor as weighing against the admission of Johnson's two prior drug convictions. *See* Taylor, 2018 WL 5832049, *5; Guerrier, 511 F.Supp. 3d at 565.

"The [fourth] factor concerns the significance of the defendant's credibility to the case. 'When the defendant's credibility is a central issue, this weighs in favor of admitting a prior conviction.'" Caldwell, 760 F.3d at 288 (citation omitted). "Where a case is reduced to a swearing contest between witnesses, the probative value of conviction is increased." *Id.* (citation omitted).

In this case, the testimony of Johnson will create a credibility contest between the defendant and the government's witnesses, as detailed above. It will create an issue as to whether Johnson distributed the fentanyl laced heroin that resulted in the death of the victim, Joshua Kiernan, or whether the drugs were provided by someone else. The jury will have to decide between this defendant's version of events and those provided by the witnesses presented by the government. Also, if Johnson testifies, he places his credibility directly at issue notwithstanding the relevance of his testimony.

See United States v. Beros, 833 F.2d 455, 463-64 (3d Cir. 1987). Thus, the credibility of all of the witnesses will be crucial to establish the government's case as well as defendant's defenses.

As such, the court finds that the fourth Bedford factor weighs in favor of admitting Johnson's prior drug convictions. See Taylor, 2018 WL 5832049, *5; Guerrier, 511 F.Supp.3d at 566; see also Cooper, 2021 WL 3732789, *8 (after first two factors weighed in government's favor, the court allowed government to impeach defendant's credibility if he testified since "the third and fourth factors essentially cancel each other out.").

Thus, three of the four Bedford factors weigh in favor of allowing the government to use Johnson's prior felony drug convictions to impeach his credibility if he testifies at trial. The court finds that the government has met its burden of showing that the probative value of defendant's two stated prior convictions outweighs its prejudicial effect under Fed.R.Ev. 609(a)(1)(B). Additionally, the government's use of defendant's stated prior convictions will be limited to cross-examination, if he testifies. See Cooper, 2021 WL 3732789, *8 (holding that if defendant "testifies at trial, the Government may impeach his general credibility with the fact of his prior conviction and the nature of the crime.") (citing United States v. Jacobs, 44 F.3d 1219, 1224 n.

6 (3d Cir. 1995) ("Case law firmly establishes that it is proper to admit evidence of the type of felony involved in a prior conviction used for impeachment under Fed.R.Evid. 609(a)(1).").

No doubt that courts have allowed the government to refer to the nature of the defendant's prior felony convictions once they determined that the convictions were admissible for impeachment purposes under Rule 609(b)(1). However, as an additional safeguard in this particular case, the court will only allow the government to refer to the fact that Johnson was convicted of prior felonies without specifying the nature of his drug convictions. As in Carey, 2019 WL 6492566, *8, this court finds that the admission of Johnson's two stated prior drug offenses is too similar to the instant charges he faces, and that it is appropriate in this case for the government to sanitize the offenses by only referring to them as prior felony convictions. Thus, in light of the drug charges Johnson faces in the instant case, the court will not allow the government to impeach him with specific facts of his prior drug felonies or by referring to the nature of these offenses. Rather, the government must only indicate that Johnson had previously been convicted of other unspecified felonies.

In order to further reduce any undue prejudice to Johnson, the court will also give a limiting instruction to the jury and direct the jury to consider this defendant's prior convictions for impeachment purposes only. *See* United States v. Cherry, 2010 WL 3156529, *7 (E.D. Pa. Aug. 10, 2010) (The court found that a limiting jury instruction would mitigate any potential prejudice to defendant.); United States v. Greenidge, 495 F.3d 85, 98 (3d Cir. 2007) (holding that the "limiting instructions were a proper counter measure to any improper uses of the evidence the jury may have been tempted to make").

Therefore, the court will grant in part the government's motion *in limine* regarding the admissibility of evidence related to Johnson's prior felony drug convictions only for purposes of impeachment if he testifies, but the court will not allow the government to specify the nature of Johnson's prior offenses.

### IV. CONCLUSION

Accordingly, the government's motion *in limine* for the court to direct defendants not to reference at trial any potential penalties they may face, **(Doc. 108)**, is **GRANTED**, and defense counsel, the defendants, and all

defense witnesses are precluded from mentioning, eliciting or arguing to the jury the potential penalties the defendants will face if convicted.

Additionally, the government's motion *in limine*, **(Doc. 110)**, is **GRANTED IN PART**, with regard to the admissibility of defendant Johnson's prior felony convictions for impeachment purposes, if he testifies at trial. However, the court will not allow the government to specify the nature of Johnson's prior offenses. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 20, 2022**
21-143-06