**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **3:CR-21-143** |
| **v.** | : | **(JUDGE MANNION)** |
| **JEREMY EDWARD JOHNSON,** | : | |
| **Defendant** | : | |

### M E M O R A N D U M

In this case with a charge of drug trafficking conspiracy resulting in death, the defendant Jeremy Edward Johnson filed on June 17, 2022, a motion *in limine* to exclude certain testimony of Kaleigh Watson, under Federal Rules of Evidence 601 and 602. (Doc. 96).[1] Johnson filed his brief in support of his motion on July 1, 2022. (Doc. 106).

The government filed its brief in opposition to Johnson's motion *in limine* on July 12, 2022. (Doc. 117).

On July 20, 2022, Johnson filed his reply brief. (Doc. 130).

Based on the following, Johnson's motion *in limine*, **(Doc. 96)**, will be **DENIED IN ITS ENTIRETY**.

---

[1]Since the complete procedural background of this case is stated in the court's July 8, 2022 Memorandum which addressed Nickas' motion for a discovery disclosure timetable, (Doc. 112), it is not repeated herein.

## I.    FACTUAL AND PROCEDURAL HISTORY[2]

Briefly, Johnson and his co-defendant, Susan Melissa Nickas, are charged with two counts in an Indictment, to wit: Count 1, Conspiracy to Distribute Controlled Substances, (heroin and fentanyl), Resulting in Death, in violation of 21 U.S.C. §846 and §841; and, Count 2, Distribution of a Controlled Substance Resulting in Death, in violation of Title 21 U.S.C. §841(a)(1). (Doc. 1). The alleged victim regarding the charges against the defendants is Joshua ("Josh") Kiernan, who died on December 11, 2020, due to "Mixed Substance Toxicity." (Doc. 96, Ex. A). Kaleigh Watson was Kiernan's fiancée and they lived together in Monroe County with their daughter. Both Kiernan and Watson were heroin users. Watson was interviewed by PSP trooper De La Iglesia and Monroe County detectives regarding Kiernan's death and, the sources from where they were buying drugs. Watson told detectives that she and Josh would buy drugs from friends, including Johnson, Chris Pugh, and a woman named "Sue."

---

[2]For present purposes, the court utilizes portions of the factual background as stated in the court's July 20, 2022 Memorandum denying Nickas' motion to suppress, (Doc. 126). The factual background of this case is also contained PSP trooper Nicolas De La Iglesia's narrative Offense Report, (Doc. 79-5), and in the Affidavit of Probable Cause in support of the March 11, 2021, search warrant for Nickas' cell phone data filed by Monroe County Detective Kim Lippincott, (Doc. 96-2). This stated background is incorporated herein by reference.

## II.   LEGAL STANDARD FOR MOTION *IN LIMINE*

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." United States v. Tartaglione, 228 F.Supp.3d 402, 406 (E.D. Pa. 2017). On a motion *in limine*, evidence should only be excluded "when the evidence is clearly inadmissible on all potential grounds." *Id.* Evidentiary rulings on motions *in limine* are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1213 (3d Cir. 1995); Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994). "The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial." Ridolfi v. State Farm Mutual Auto. Ins. Co., 2017 WL 3198006, *2 (M.D. Pa. July 27, 2017). Further, "[c]ourts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence." *Id.*

"A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." United States v. Tartaglione, 228 F.Supp.3d at 406. "Further, a trial court's ruling on a motion *in limine* is 'subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer.'" *Id.* (quoting Luce v. United States, 469 U.S. 38, 41, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)).

3

## III.   DISCUSSION

Johnson's motion *in limine* is filed pursuant FRE 601 and 602, and he seeks to exclude portions of Watson's testimony based on her alleged lack of personal knowledge and lack of competency, due, in part, to her drug use at the relevant time.

In United States v. Meehan, 741 F.App'x 864, 874 (3d Cir. 2018), the Third Circuit addressed Rules 601 and 602 in the context of the competency of a drug using witness, and stated:

> Every witness is presumed competent to testify, Fed.R.Evid. 601, so long as the witness (1) has personal knowledge of the matter, Fed.R.Evid. 602, and (2) gives an oath or affirmation to testify truthfully, Fed.R.Evid. 603. There are "[n]o mental or moral qualifications for testifying as a witness," and "[a] witness wholly without capacity is difficult to imagine." Fed.R.Evid. 601, Advisory Committee Notes to 1972 Proposed Rules. "[M]ental capacity [is] ... highly relevant to credibility and require[s] no special treatment to render [evidence about mental capacity] admissible along with other matters bearing upon perception, memory, and narration of witnesses." *Id*. Because "[t]he question is [ ] particularly suited to the jury as one of weight and credibility," "[d]iscretion is regularly exercised in favor of allowing the testimony." *Id*. The trial court "must decide any preliminary question about whether a witness is qualified," Fed.R.Evid. 104, and its determination about the competency of a witness to testify falls within its sound discretion, United States v. Hicks, 389 F.2d 49, 50 (3d Cir. 1968).

Johnson argues, (Doc. 106 at 2), that Watson's testimony should be limited because:

> The discovery produced indicates that Mr. Kiernan used drugs while alone in a bathroom at a job site on December 11, 2020[,] and Ms. Watson was not present physically or through any electronic means at the time Mr. Kiernan used drugs that allegedly caused his death. Ms. Watson has no

4

personal knowledge of what drugs Mr. Kiernan may have ingested on December 11, 2020 prior to his death; and therefore, Ms. Watson should not be permitted to testify regarding what drugs Mr. Kiernan may have ingested prior to his death on December 11, 2020.

Johnson, (Doc. 106 at 4-5), also points out that the evidence, (Doc. 96-2), demonstrates that "Watson unequivocally informed law enforcement that she does not recall the events of December 10, 2020 even after law enforcement attempted to refresh he[r] recollection with electronic messages and bank statements from that day." He states that "[officers] indicated in their Affidavit of Probable Cause that [] Watson 'doesn't recall what happened' on December 10, 2020." He further points out that even after Watson reviewed the December 10, 2020 documents, she only stated that she "may have" given money to Jeremy Johnson on December 10, 2020, but, "she does not specifically recall the event."

In his reply brief, (Doc. 130 at 3), Johnson clarifies his position, stating that Watson's statements that "she doesn't recall what happened" on December 10, 2020, are her true and accurate statements, and that these statements "clearly establish that Ms. Watson is not competent to testify regarding these matters because she does not have personal knowledge or the capacity to recall the events of December 10, 2020 and December 11, 2020."

Thus, Johnson concludes that since "Watson does not have the capacity to recall the events of December 10, 2020", she does not have the requisite capacity to testify about this day pursuant to Fed.R.Evid. 601. He also contends that due to

Watson's inability to recall the events of December 10, 2020, she does not have the requisite personal knowledge to testify about these events pursuant to Fed.R.Evid. 602.

Johnson's challenge to Watson's "credibility, veracity, and reliability" "does not fall under Rule 601 and competency." U.S. v. Zarek, 2021 WL 4391393, *32 (W.D. Pa. Sept. 24, 2021) (citing United States v. Roebuck, 334 F. Supp. 2d 833, 835 (D. V.I. 2004)). "Competency of a witness to testify is often confused with *admissibility of evidence*, but Rule 601 'regulates witnesses, not the admissibility of evidence.'" *Id*. (emphasis original) (citation omitted). "Competency, which is determined by the court, also is confused with credibility, which is determined by the jury." *Id*. Here, as the government states, Johnson "has confused memory with personal knowledge and competency", and Watson is presumed competent to testify, pursuant to Rule 601. Watson will be permitted to testify about matters of which she has personal knowledge, under Rule 602, and the jury will determine the credibility of Watson and the weight to give her testimony.

If she can recall, Watson will also be permitted to testify about the identity of the person from whom she allegedly purchased drugs on December 10, 2020, and about the identity of the drugs. *See* Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng'g, 57 F.3d 1190, 1198 (3d Cir. 1995) (citing United States v. Sweeney, 688 F.2d 1131, 1145–46 (7th Cir. 1982) (holding that a

lay-witness drug user could testify as to identity of drugs based upon his prior use and knowledge, including his sampling of the drug and conclusion that the drug affected him in the same manner as it had before)). Further, if Watson testifies that she has personal knowledge about the usual method Kiernan employed to ingest controlled substances, she will be permitted to tell the jury the method.

Moreover, Johnson challenges Watson's "anticipated" testimony as to which drugs Kiernan ingested on December 11, 2020, since she not with Kiernan at the time. However, the government, (Doc. 117 at 7), indicates that Johnson's anticipated testimony by Watson is "specious" since it does not intend to rely on Watson's testimony "as an eye witness to Kiernan's death."

In short, the court finds Johnson's challenges to Watson's testimony, including whether Watson has personal recollection of the events that took place on December 10, 2020, and whether Watson knows who Josh Kiernan obtained drugs from on December 10, 2020, are matters that his counsel can raise on cross-examination of Watson. These challenges do not require the court to limit Watson's testimony as Johnson seeks, namely by issuing an Order excluding Kaleigh Watson from testifying about the events that took place on December 10, 2020, as well as the events she did not personally witness on December 11, 2020.

Based on the above, the court also finds that there is no need for a hearing to be held in order to determine the competency of Watson's potential testimony, as Johnson alternatively requests in his motion.

The court next considers whether defendants will be allowed to cross-examine Watson at trial about her drug use since it is apparent that this issue will arise.

As the court in U.S. v. Weigand, 2021 WL 1424728, *9 (E.D. Pa. April 15, 2021), explained:

> As a general matter, "evidence relating to drug use is not probative of truthfulness or untruthfulness." Dover-Hymon v. Southland Corp., 1993 WL 419705, at *6 (E.D. Pa. Sept. 27, 1993); United States v. Sellers, 906 F.2d 597, 602 (11th Cir. 1990) ("[P]rior instances of drug use are not relevant to truthfulness for purposes of Fed.R.Evid. 608(b).")). Two exceptions to this rule— [] —are: (1) "when the drug use occurred while the witness was in a cooperative relationship with the Government *and* the Government was contemplating prosecution for that use or at least was aware of the drug use"; and (2) "when the drug use occurred during 'relevant periods of trial and the transaction charged in the indictment,' thereby affecting the witness' ability to perceive the underlying events and to testify lucidly at trial." United States v. Bertoli, 854 F. Supp. 975, 1088 (D. N.J. 1994) (emphasis in original) (quoting Sellers, 906 F.2d at 602), *aff'd in part*, *vacated in part*, 40 F.3d 1384 (3d Cir. 1994); Jarrett v. United States, 822 F.2d 1438, 1446 (7th Cir. 1987) ("A witness's use of drugs may not be used to attack his or her general credibility, but only his or her ability to perceive the underlying events and testify lucidly at the trial.").

> Fed.R.Evid. 608(b) provides:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of

the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about.

The officers were clearly aware of Watson's drug use during the relevant time of this case when they interviewed her and, they were aware that she was using drugs during the relevant times of this case.

Here, the court will allow Johnson and Nickas to question Watson regarding her drug use that occurred during the relevant time regarding the charges in this case. *See* Weigand, 2021 WL 1424728, at *9. Additionally, "[t]hese determinations are without prejudice to Defendant[s'] ability at the time of trial to seek an expansion of the scope of time within which [Watson's] drug use may be relevant." *Id*. Finally, the court will give an appropriate limiting jury instruction regarding the testimony of a substance user. *See also* United States v. Meehan, 741 F.App'x at 874 (the Third Circuit found no error when district court "allowed defense counsel to probe [witness'] drug addiction and recent heroin use at length" and, "the [district] court specifically instructed the jury about the effect of drug use on a witness's credibility, stressing that drug use may impact a witness's 'ability to perceive, remember or relate events in question.'"

## IV.   CONCLUSION

For the aforementioned reasons, Johnson's motion *in limine* to exclude portions of Watson's testimony at trial, namely, about the events that took place on December 10, 2020, and about events she did not personally witness on December 11, 2020, **(Doc. 96)**, is **DENIED IN ITS ENTIRETY**. Johnson's alternate request for a hearing to determine the competency of Watson's potential testimony is **DENIED**. An appropriate Order follows.

s/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States District Court**

**Dated: July 20, 2022**
21-143-07

10